UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>　　　　　　　　Plaintiff<br>v.<br><br>ALL FUNDS ON DEPOSIT AT SUN SECURED ADVANTAGE, ACCOUNT NUMBER: *3748 HELD AT THE BANK OF NT BUTTERFIELD & SON LTD. IN BERMUDA<br><br>and<br><br>57 CREEKBEND DRIVE<br>BROWNSVILLE, TEXAS 78521<br>　　　　　　　　Defendants | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. |

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, Plaintiff, files this action for forfeiture of all funds on deposit at Sun Secured Advantage, Account Number *3748, held at the Bank of NT Butterfield & Son Ltd., in Bermuda; and for the forfeiture of the real property at 57 Creekbend Drive, Brownsville, Texas, (the defendant properties). (All but the last four digits of account numbers have been redacted per the Local Rules.) The United States alleges on information and belief:

### NATURE OF ACTION

1. This civil action *in rem* brought to enforce the provisions of:

　　(a) 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of real and personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, and property traceable to such property;

　　(b) 18 U.S.C. § 981(a)(1)(B), which provides for the forfeiture of real and personal property located in the United States constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, and property that is used to facilitate such offense (i) if the offense involves conduct defined as specified unlawful activity in 18 U.S.C. § 1956(c)(7)(B); and (ii) the offense would be punishable by imprisonment for more than one year (a) within the jurisdiction of the foreign nation and (b) under the laws of the United

1

States if the act or activity constituting the offense had occurred within the jurisdiction of the United States; and/or

(c) 18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of real and personal property which constitutes or is derived from proceeds traceable to specified unlawful activity, or a conspiracy to commit such offense.

## DEFENDANTS PROPERTY

2. The defendant properties subject to forfeiture are:

(a). all funds on deposit at Sun Secured Advantage, Account Number *3748, held at the Bank of NT Butterfield & Son Ltd., in Bermuda ("defendant currency"), and consisting of $2,810,539.60 as of October 10, 2014; and

(b). real property, improvements and appurtenances, titled to Maria Castaneda-Torres, located at 57 Creekbend Drive, Brownsville, Texas ("defendant real property") and legally described as:

> Lot Twelve (12), Block Three (3), Land-o-Lakes Subdivision, in the City of Brownsville, Cameron County, Texas, according to the map or plat thereof recorded in Volume 28, Page 23, Map of Records of Cameron County, Texas.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355. This court has *in rem* jurisdiction over the defendant properties under 28 U.S.C. §§ 1355(b) and 1395 (b). Venue is proper in this district pursuant to 28 U.S.C. § 1355(b).

## FACTUAL BASIS FOR FORFEITURE

4. Erick Agustin Silva Santos (Silva) is a citizen of Mexico. From 2008 through 2010, Silva was the mayor of the city of Matamoros. Since 2002, Silva has held various political positions in the State of Tamaulipas, Mexico. He was the Regional Program Coordinator for the Government of Tamaulipas from December 2006 through May 2007, Federal Deputy from August 2004 through November 2006, Chairman of the Municipal Leadership Committee for the PRI Political Party from November 2003 through July 2004, and Secretary of Social Development for Matamoros from January 2002 through October 2003.

5. Maria Castaneda-Torres (Castaneda) is Silva's common law spouse. In January 2003, Silva and Castaneda opened a joint savings account, account number *3501, at JP Morgan Chase Bank, a U.S. financial institution located in Brownsville, Texas (joint savings account *3501). Prior to Silva's mayoral campaign in 2007, the balance in this account was approximately $15,000. The account balance later increased because of deposits and transfers of (1) misappropriated campaign contributions, (2) unlawful kickbacks from municipal contracts, and (3) unlawful proceeds from the approval of false invoices.

6. Silva entered the mayoral race for the city of Matamoros, Mexico in June 2007. He served as the mayor of Matamoros from 2008 through 2010, and his annual salary in United States dollars was about $100,000.

7. During the mayoral race, Silva received campaign contributions that in United States dollars would total more than $1 million. He used much of the campaign contributions he received for his personal benefit, and between June 2007 and December 2007, these contributions were deposited into joint savings account *3501. The contributions were then transferred from the *3501 account to an annuity in an offshore account, account number *1479(annuity account). By June 2008, the balance in the annuity account was $1,615,000.

8. As mayor, Silva awarded millions of dollars in municipal contracts to Mexican companies that had made large campaign contributions to his campaign. In awarding these contracts, Silva disregarded bidding processes and municipal policy.

9. The city of Matamoros spent about $721,428,371 Mexican pesos on public projects in 2008 through 2010. Silva received kickbacks of 10-20 percent of the value of the municipal contracts from the companies awarded the contract. The amount of money Silva received as kickbacks is estimated at $72,142,837 to $144,285,674 in Mexican pesos, or approximately $5,329,544 to $10,659,088 in United States dollars.

10. Silva also approved invoices for payment by the city of Matamoros for work that he knew was not performed. Silva received millions of Mexican pesos from Mexican companies awarded the municipal contracts for projects that he knew did not exist, and the money he received was deposited, by wire transfer and other means, into bank accounts at financial institutions in the United States, including Inter National Bank, J.P. Morgan Chase Bank, Texas National Bank, and Plains Capital Bank. The amount of money Silva received from these companies exceeded 2 million in United States dollars.

11. On July 2, 2008, Silva opened a checking account at Inter National Bank, in Brownsville, Texas. Over $400,000 was deposited into this account, including a wire transfer for $120,523 on January 15, 2009, and a check for $286,880 on January 7, 2010.

12. On July 16, 2008, Silva and his brother Hector Silva Santos (Santos) opened an account in the name Aceros Industriales de Matamoros S.A. de C.V. at JP Morgan Chase Bank in Brownsville, Texas (Aceros account). This account received foreign exchange credits of Mexican pesos to U.S. dollars. By September 9, 2008, the balance in this account exceeded $791,000.

13. Aceros Industriales de Matamoros S.A. de C.V. did not legitimately earn the money deposited into its JP Morgan Chase Bank account in Brownsville, Texas.

14. Silva renewed his non-immigrant visa in March 2009. As part of the renewal process, Silva stated he was employed by the city of Matamoros, Mexico. Based on average historical currency exchange rates, Silva declared his annual salary was about $100,000.

15. On August 6, 2009, Silva and Castaneda transferred $1,691,472.15 from the annuity account to the Aceros account. Silva and Castaneda also completed an authorization form at JP Morgan Chase Bank for an offshore investment account representing their annual income as $400,000 and net worth as $3.7 million.

16. On September 30, 2009, Silva wire transferred $2.4 million from the Aceros account at JP Morgan Chase Bank in Brownsville, Texas, to the Sun Secured Advantage, Account Number *3748, at Bank of NT Butterfield & Son Ltd.

17. On September 30, 2010, Silva withdrew $183,730.46 from his Inter National Bank account in Brownsville, Texas, for the purchase of the defendant real property located at 57 Creekbend Drive, Brownsville, Texas, in Castaneda's name.

18. There is no known legitimate source of earnings to account for the defendant properties.

19. The misappropriation of campaign contributions, kickbacks, and proceeds obtained from approving false invoices, are violations of the laws of Mexico and are punishable by more than one year of imprisonment.

## CONCLUSION

20. The defendant properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), 18 U.S.C. § 981(a)(1)(B), and 18 U.S.C. § 981(a)(1)(C).

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than thirty five (35) days from the date this complaint is sent, in accordance with Rule G(5).

An answer or motion under Fed.R.Civ.P. 12 must be filed no later than twenty one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this complaint.

WHEREFORE, the United States of America requests that judgment of forfeiture be entered against the defendant properties, and for such costs and other relief to which the United States may be entitled.

Respectfully Submitted,

KENNETH MAGIDSON
United States Attorney

By: /s/ Jesse Salazar
JESSE SALAZAR
Assistant United States Attorney

By: /s/ Christopher Sully
1701 W. Highway 83, Suite 600
McAllen, Texas 78501
(956) 618-8010

## VERIFICATION

I, John Lyons, a Special Agent with Homeland Security Investigations (HSI), hereby declare

5

under penalty of perjury that I am one of the agents responsible for the investigation concerning this litigation. I have read the above Complaint for Forfeiture. Based upon the investigation conducted by myself and other agents of the Department of Homeland Security, Homeland Security Investigations (HSI) of which I have knowledge, the facts contained in the Complaint for Forfeiture, paragraphs 4-17, are true and correct to the best of my knowledge and belief.

_____
John Lyons
Special Agent, HSI

Sworn and subscribed before me, the undersigned authority on this 6th day of Nov. 2014.

_____
Notary Public in and for the State of Texas

BERTHA CAVAZOS
MY COMMISSION EXPIRES
October 23, 2017