UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MC ALLEN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  7:14-CV-00942 |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | McAllen, Texas |
| | ) | |
| ALL FUNDS ON DEPOSIT | ) | Monday, April 4, 2016 |
| AT SUN SECURED ADVANTAGE, | ) | (10:02 a.m. to 10:03 a.m.) |
| ACCOUNT NO. *3748, ET AL., | ) | (10:10 a.m. to 10:32 a.m.) |
| | ) | |
| Defendants. | ) | |


FINAL PRETRIAL CONFERENCE

BEFORE THE HONORABLE RANDY CRANE,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For United States:        JESSE SALAZAR, ESQ.
                          Office of the U.S. Attorney
                          1100 Matamoros, 2nd Floor
                          Laredo, TX 78040


For Defendants:           BENIGNO TREY MARTINEZ, III, ESQ.
                          Martinez Barrera Martinez
                          1201 E. Van Buren St.
                          Brownsville, TX 78520


Court Recorder:           Rick Rodriguez


Transcribed By:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, Texas 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1      **McAllen, Texas; Monday, April 4, 2016; 10:02 a.m.**

2                          **(Call to Order)**

3          **THE COURT:** 14-CV-942: *United States of America*

4  *versus All Funds on Deposit at Sun Valley Savings and Loan*

5  *[sic]*.

6          Is there anybody here?

7          **MR. MARTINEZ:** We had a final pretrial, Judge.  We

8  still have some pending motions.

9          **THE COURT:** Right.  Where is Ms. Smyth or Mr. Jessie

10  Salazar?

11          **MR. MARTINEZ:** I don't know.  I haven't spoke to

12  Ms. Smyth in over a week but I don't have a problem waiting for

13  them, you know.

14          **THE COURT:** Well, they -- I mean Ms. Smyth is out of

15  Laredo.

16          **MR. MARTINEZ:** Right.

17          **THE COURT:** So I don't -- unless she's in her car

18  already it might be a long wait but let me -- let's do this.

19  Mr. Salazar works in the building.

20          **MR. MARTINEZ:** I also don't have no problem even

21  addressing it tomorrow when we have our trial.

22          **THE COURT:** All right.  Well, maybe I need to have

23  them summoned in but hang on here very quickly.  I just sent

24  them an e-mail.  Let me -- let me take a brief recess and

25  figure out where they are and then we can talk about the case

1    and the really one big issue out there.  There was no response

2    to their motion.  They filed their motion to dismiss as opposed

3    because they said there was no response.  So I need to visit

4    about all of that and let's get them inside here before we do

5    that.

6           All right.  I'll take a brief recess.

7           **COURTROOM DEPUTY:**  All rise.

8      **(Recess taken from 10:03 a.m. to 10:10 a.m.)**

9           **THE COURT:**  All right, and let me recall 14-CV-942:

10   *USA versus All Funds on Deposit at Sun Secured Advantage, et*

11   *al.*

12          **MR. SALAZAR:**  Jesse Salazar for the government, your

13   Honor.

14          **MR. MARTINEZ:**  Trey Martinez on behalf of the

15   plaintiffs, your Honor.

16          **THE COURT:**  All right.  Mr. Martinez [sic], I mean,

17   9:30 docket call.  It's 10:00 -- it's 9:50 -- why weren't you

18   here at 9:30 or somebody here at 9:30?

19          **MR. SALAZAR:**  Judge, we this -- this popped up on my

20   Outlook calendar this morning and I came over here and I didn't

21   see anyone.  I saw you on the bench.  I saw other people.  I'm

22   not going to lie to you that I was here at 9:30 though so

23   there's no excuse for that but I wasn't sure if this was really

24   on or not and so I went upstairs.  I called Mary Ellen in

25   Laredo.  She's had some kind of family death or I don't know

4

1    what and she -- we thought that since we were here just a few

2    -- a month or two ago that discovery's still going and we have

3    a nonsuit with you or before the Court that there was an error

4    in our systems.  We didn't check the docket which was our

5    mistake and we should have seen that and so I came back.  I

6    spoke to her and she says, "Look, just -- if Trey's not there

7    and no one's there just tell the Court, advise the Court, that

8    you know, it should have been changed or whatever it is."  So I

9    came back and that's when I saw Trey and I saw, you know, the

10   Court.   You had left the bench.  So there's no excuse, your

11   Honor.  We just completely messed up --

12            **THE COURT:**  All right.

13            **MR. SALAZAR:**  -- as far as seeing the setting.

14            **THE COURT:**  Okay.  Ms. Smyth, she's in Laredo, right?

15            **MR. SALAZAR:**  She's in Laredo, yes, Judge.

16            **THE COURT:**  Okay.  So let's -- I wanted this hearing.

17   I don't know why you would think I didn't.  I mean there's two

18   things pending but where we last left off the government said,

19   "Well, we're going to -- we'll nonsuit the house so that the

20   claimants who are only making claim to the house remain in the

21   house.  We'll worry about the other with respect to the

22   criminal action.  So if he's acquitted or the charges are

23   dismissed then she keeps the house.  If he's convicted or

24   whatever and there's also a forfeiture aspect of that, it'll

25   decide it.  We don't have to decide it here."  It sounded like

1   Mr. Martinez was like, "Oh, well maybe that's a good deal," and

2   you-all were going to go talk about it and then since then I

3   actually get the formal motion to dismiss the house out of this

4   case and there was no certificate of conference or they said

5   they hadn't really conferred so we noted it as opposed is what

6   I thought.

7          **MR. MARTINEZ:**  No, we did confer, your Honor.

8          **THE COURT:**  You did confer and you were opposed?

9          **MR. MARTINEZ:**  It's not that I don't -- it's not that

10  I'm really opposed to this nonsuit of the house but there are

11  certain things that I don't want to give up for appellate

12  purposes and the purposes of Ms. Torres to be able to bring a

13  claim against the government for fees and other remedies that

14  may be available to her for bringing her into this in the first

15  place.  That's the only reason.

16         **THE COURT:**  Sure, okay.

17         **MR. MARTINEZ:**  I didn't want to give up any of her

18  rights.

19         **THE COURT:**  Okay.

20         **MR. MARTINEZ:**  And so I made that very clear to Mary

21  Ellen and she understood that.

22         **THE COURT:**  All right.

23         **MR. MARTINEZ:**  And that's the only reason.

24         **THE COURT:**  Okay.

25         **MR. MARTINEZ:**  And we -- and we -- don't get me

6

1   wrong, Judge.  We understand that both the house, and the

2   funds, and he's going after another $5 million are all in the

3   criminal action.  My clients are very well aware that the civil

4   forfeiture is a very small aspect of what Mr. Silva is dealing

5   with.

6           **THE COURT:**  Sure.

7           **MR. MARTINEZ:**  Because any proceeds that are

8   illegally obtained or --

9           **THE COURT:**  They can go back.

10          **MR. MARTINEZ:**  -- used for ill-gotten gains are all

11   going to come back if in fact the jury in the criminal case

12   find them guilty of this crime and also agrees to the

13   forfeiture.

14          Now, all that being said, one of the things that I've

15   asked the government to do is that in this case we haven't had

16   any discovery.  So this case was stayed for a number of

17   different times and for a long period of months really and so

18   we just started this case again and so once the government

19   filed their fugitive disentitlement motion we hadn't had any

20   discovery.  One of my biggest issues with them is we still

21   haven't have any discovery and so I asked him, I said, "Why

22   don't we stay the civil case pending the criminal because it's

23   a lot easier because there's so many appellate issues out there

24   right now because all we have is exculpatory or -- yes,

25   exculpatory evidence from Mr. Silva from Mexico and we don't

1   have any other evidence and this is why I wanted discovery?"

2   and so -- and I'm not speaking for Mr. Salazar -- but it wasn't

3   something they necessarily disagreed with but they didn't have

4   the authority to agree to the stay but I think for everybody's

5   purposes, even my client says, "Hey listen, so we kind of stop

6   this until they get the extradition request" which apparently

7   has already been started and that going.  It's okay.  We don't

8   have a problem staying everything because I think once the

9   criminal case is done it will get rid of the civil issues, all

10  of them.

11          Okay.  So all these dispositive motions that we have

12  and responses and replies that you normally don't see in civil

13  forfeiture actions --

14          **THE COURT:**  Right.

15          **MR. MARTINEZ:**  -- okay, all that may be moot meaning

16  if all -- if he gets found guilty and all the criminal

17  forfeiture goes, all this makes this issue moot.

18          **THE COURT:**  He's a fugitive right now?  Don't I

19  understand that?

20          **MR. MARTINEZ:**  Yes.

21          **THE COURT:**  Okay.  Let me -- so answer a few

22  questions and then we'll respond -- so he's a fugitive.

23          Now sometimes the government doesn't proceed with a

24  trial against a fugitive.  They just let him remain a fugitive

25  for ten years.  Sometimes they proceed with a trial.  I've had

1   it done both ways in my court where -- although I would have to

2   say he became a fugitive after the first day of the trial but

3   -- and I will have to say the person is still a fugitive to

4   this day and that happened five or six years ago, but was

5   convicted, and then I sentenced the person all in absentia.

6          So what's the government's position on this one?  Are

7   they going to -- are they going to proceed against him in

8   absentia and try him?

9          **MR. SALAZAR:**  We are --

10          **THE COURT:**  Or not?

11          **MR. SALAZAR:**  This is -- this is the thing about --

12   about this defendant, your Honor, is that -- is that we have

13   had a credible fear for some of our witnesses and so we have

14   been working on the extradition and we are going to be moving

15   on that extradition packet through OIA and DC and it takes a

16   while.

17          **THE COURT:**  Right.

18          **MR. SALAZAR:**  Unless the defendant decides to finally

19   come into the country and turn himself [sic].

20          I'm not agreeing to the stay first of all.

21          **THE COURT:**  Sure, I understand.

22          **MR. SALAZAR:**  We're not agreeing to it but I mean

23   we've been here for so long already waiting for the defendant

24   to come into the country and it's -- and it's clear that he's

25   not going to come into the country.

1          **THE COURT:**  Right.

2          **MR. SALAZAR:**  We could be doing this, Judge, for

3    another few years.

4          **THE COURT:**  Well, extradition shouldn't take that

5    long.

6          **MR. SALAZAR:**  It shouldn't, Judge, but sometimes the

7    proceedings --

8          **THE COURT:**  I'm going to guess a year, a year and a

9    half maybe.

10          **MR. SALAZAR:**  Sometimes -- right, right, Judge, and

11   so that's the thing and so when we -- when we did confer, we

12   had Mr. Yzquierdo (phonetic) who's the -- who's co-counsel and

13   also the attorney on the criminal matter.  I was there.

14   Ms. Smyth was there.  Even the agent was there, and we

15   discussed the different paths to this and I can't speak for

16   Mary Ellen but my recollection was and in speaking to her after

17   we left that, that we decided that we were not going to agree

18   to a stay in the civil case.

19          The Court has already looked at our position on a

20   fugitive disentitlement.  We think that the defendant and it's

21   our position, Judge, that he's not entitled to discovery

22   because he's a fugitive.  He just cannot a mean [sic] himself

23   of this courtroom without actually being here and so --

24          **THE COURT:**  And the claimants that you represent are

25   only claimants as to the home, correct?

1          **MR. MARTINEZ:**  No.  There's a --

2          **THE COURT:**  Well, there's two ladies.

3          **MR. MARTINEZ:**  No, there's a husband and a wife.

4          **THE COURT:**  A husband and wife.

5          **MR. MARTINEZ:**  And the husband made a claim to both

6   the home --

7          **THE COURT:**  And the proceeds.

8          **MR. MARTINEZ:**  -- and the proceeds.

9          **THE COURT:**  Okay, but the wife --

10         **MR. MARTINEZ:**  The wife --

11         **THE COURT:**  -- is only as to the home.

12         **MR. MARTINEZ:**  The wife made a claim purposely for

13  just the home because her name is on the home.

14         **THE COURT:**  All right, and so the government wants to

15  dismiss the home out of here so that would leave only the

16  husband and the funds?

17         **MR. MARTINEZ:**  Right, and they've already filed a lis

18  pendens against the home in the criminal case.  So this home is

19  not going anywhere anyway.  Okay.

20         **MR. SALAZAR:**  I indicted the house also, your Honor.

21         **THE COURT:**  Right.  So why -- why do I need to keep

22  this case pending on my docket?  It's going to show up on my

23  reports when I got to report to the AO about my pending cases

24  and how old they are, how stale they are.

25         **MR. MARTINEZ:**  Judge, the only reason that we're

1    having issues here and again this is something I think that

2    started out very simple and because of the fact that we didn't

3    get discovery and we didn't go through the process the next

4    thing you know I mean the -- and I know there's always

5    preconceived notions about Mexico and this guy says, "Hey

6    listen there's nothing charged in Mexico.  There's nothing

7    indicted in Mexico.  There's no investigation in Mexico," and

8    so I said to my client, "Can you get me that evidence?" and we

9    got it.

10        So the only evidence that is truly before this Court

11   honestly and this is why the Fugitive Disentitlement Act in

12   this, okay, doesn't really apply is because all we have is

13   exculpatory evidence from a country in Mexico with documents

14   that are supported and entered into the record here and we have

15   no other evidence and so for us to sit back at this day and age

16   and say we're not going to look at this evidence and we're only

17   going to rely on right now and we just got the first piece of

18   something which was an affidavit by an agent in order to get

19   over a statute of limitations issue that I brought up, you

20   know, for the first time a month ago because this case just

21   started again.  So there's all these issues that I think are

22   still pending out there.

23        **THE COURT:**  But I guess the -- it's harsh.  The law's

24   harsh but it doesn't matter that the only evidence is that

25   whatever this -- these funds had nothing to do with his

1    activity or he's committed no crimes.

2            **MR. MARTINEZ:**  Well, what they're trying --

3            **THE COURT:**  You can't be a fugitive and make that

4    position.

5            **MR. MARTINEZ:**  And I understand that.

6            **THE COURT:**  It's like it just --

7            **MR. MARTINEZ:**  But this is where the Court has

8    discretion in every case that I've cited and I understand it's

9    harsh, don't get me wrong.  I'm not --

10           **THE COURT:**  Yes, I mean that's just -- the law is the

11   law.

12           **MR. MARTINEZ:**  I think civil forfeiture is harsh.  I

13   think, you know, the forfeiture laws, you know, we have some

14   issues with and -- but we differentiate this specific case from

15   all the other cases given that we have exculpatory evidence

16   from the country of Mexico basically saying there is no crime

17   there that he's either being investigated, indicted, or any of

18   that, and this is the crime that they're accusing him of.

19   Okay, and so they're saying there's nothing here.  So why are

20   you coming into our country, dipping your fingers and saying,

21   "Hey listen, I'm going to go indict somebody for doing

22   something in their own country over here in the United States

23   in order to secure money and a home"? and that's -- that's

24   where the rub is.  Right?  And of course nobody's going to come

25   up over here from another country and say, "Hey listen, I'm

1    going to go subject myself to the United States if I didn't do

2    anything over there."  This is for everything that happened in

3    Mexico.

4            **THE COURT:**  Right.

5            **MR. SALAZAR:**  No, Judge, if I may.  The

6    characterization that the evidence is exculpatory is just that.

7    It's a characterization made by --

8            **THE COURT:**  Well, let's assume that for the sake of

9    argument --

10           **MR. SALAZAR:**  Sure.

11           **THE COURT:**  -- is what I mean.

12           **MR. SALAZAR:**  But the crime was committed in the

13   United States, Judge.  Maybe one of the elements or some of the

14   elements were committed over there but the crime was here;

15   that's why we have jurisdiction.  We are not looking to Mexico

16   and seeing a law was violated and we're snatching someone and

17   bringing them over here.  Those funds were transferred into the

18   U.S. banking system and those funds went through the U.S.

19   banking system.  Some of them were here and they were taken

20   away before we could get them and some of them ended up in we

21   believe or we have evidence it shows that those funds went into

22   that house and that all the money that was paid for that house

23   came from -- from specified unlawful activity.  The money

24   that's in Bermuda, the $3 million also is traced back to the

25   U.S. banking system, through U.S. banks and through -- we have

1   witnesses.  We have documentary evidence.  We have different

2   things.  So it's not that there is only -- that this case is in

3   a vacuum and that only their evidence from Mexico by the

4   Mexican authorities is all that there is.  I mean the

5   government does have its case but for established case law your

6   initial ruling, your Honor, we're not in a position or should

7   we turn that over to the defense because he's a fugitive.

8           **THE COURT:**  All right.  So we do have two pending

9   motions that are -- neither of which are ripe.

10          Mr. Martinez, do you intend to respond to this motion

11  for nonsuit or are you okay with me granting it?  I mean I

12  don't know how you oppose it.

13          **MR. MARTINEZ:**  I see what you're --

14          **THE COURT:**  It seems like you're happy that it's out.

15          **MR. MARTINEZ:**  You're right.  You're right.  The only

16  reason I was opposed, Judge, is so I didn't give up any of her

17  rights to seek any of the other remedies available --

18          **THE COURT:**  Okay.

19          **MR. MARTINEZ:**  -- to her and that's it.

20          **THE COURT:**  All right.  So I'm going to grant it over

21  your opposition.  Okay.  So it doesn't -- she has all her

22  rights preserved and now the other -- you also have a motion to

23  dismiss to ever state a claim and I presume that applies to

24  both the cash and the home and the home will be out.

25          **MR. MARTINEZ:**  So now we're dealing with -- I guess

15

1    the only pending live motion was the motion for

2    reconsideration, right.

3              THE COURT:  Right, and I already have a draft order

4    on that.

5              MR. MARTINEZ:  Okay, and then --

6              THE COURT:  And then you just filed on the 18th an

7    opposal to dismiss for failure to state a claim, a 12(b), and

8    this is -- I believe it was to both.  Yes, no, it's as to the

9    funds on deposit.

10             MR. MARTINEZ:  And I think what we have once again --

11             THE COURT:  It says to both.

12             MR. MARTINEZ:  And we'll rely on all the other

13   written motions and what's been filed before the Court for the

14   record.

15             One of the issues that -- when the Court did grant

16   the fugitive disentitlement motion and the Court I think

17   correctly stated in its order said, "Listen, even though he may

18   be a disentitled fugitive because he's not over here," and

19   don't get us wrong.  We tried to get him over here to try and

20   agree to something which didn't happen.  Okay.  The Court

21   correctly said, "Hey listen, just because I disentitled this

22   guy for a claim you still have to have enough evidence to have

23   a final judgment on these monies and this home."  And once

24   again, we're back in the position of I have nothing.  This is a

25   very different -- I've never dealt with a case like this and

1   you and I have been practicing for quite some time now where I

2   sit back and I have nothing and I get everything taken away and

3   the only evidence I have is from my side and so even in a civil

4   forfeiture which I think is again harsh to say the least but

5   when you only have one set of evidence it makes it very

6   difficult for I think any court to say, "Hey listen, I'm just

7   going to enter a final judgment based upon the fugitive

8   (indiscernible).  Come up with something.

9           **THE COURT:**  Right.  So they still have to prove the

10  elements of the forfeiture.

11          **MR. SALAZAR:**  That's being worked on, your Honor.

12          **THE COURT:**  I mean they still have to prove that and

13  -- but your guy doesn't get to claim them but what happens if

14  the government is unable to prove it to the Court's

15  satisfaction that these are monies from -- these are ill gotten

16  games?

17          **MR. SALAZAR:**  Right, Judge.

18          **THE COURT:**  I mean there's a number of things that

19  could happen, you know, wrong bank, these are somebody else's,

20  or I mean who -- doesn't the fugitive who I've disentitled get

21  to come and argue against the government's evidence?  I mean

22  who --

23          **MR. SALAZAR:**  I don't know about that part, Judge,

24  all right.

25          **THE COURT:**  Who argues against or is it just you get

1  to just make your presentation to the Court without opposition?

2       **MR. SALAZAR:**  I have not done research into that

3  point.  I know Mary Ellen has, AUSA Mary Ellen Smyth, and she's

4  better equipped for that but, Judge, and for the record because

5  I also have been practicing for awhile, Judge, and I am of the

6  philosophy and the way I have always practiced is I give

7  everything, even things that I'm not required.  I give

8  everything in discovery and this is different and the thing

9  about this situation, your Honor, is that, you know, I want it

10  to be clear we are ready to show all of our discovery but he

11  has to come here and initially when we unsealed this indictment

12  Mr. Silva was giving press conferences and there is no -- I

13  mean this goes without saying.  He knows that this is here and

14  he made statements to the Mexican press that he would come here

15  and he would answer these charges.  It's been over a year.

16  It's been a year and a half.  I think it's been closer to two

17  and he's still not here and so the reason that he does not come

18  here is because he does not want to face an American courtroom.

19  Irrespective of whatever his motivations are he has not come

20  here and, therefore, he is a fugitive and that is why we are

21  not providing the discovery.  It's no bad faith on our part,

22  your Honor.

23       **THE COURT:**  All right, that's doesn't answer -- that

24  doesn't answer --

25       **MR. MARTINEZ:**  No, no, I'm not --

18

1          **THE COURT:**  Hang on.  That doesn't answer my

2     question.   My question is --

3          **MR. SALAZAR:**  If we don't make the case.

4          **THE COURT:**  Yes.   Who -- does somebody get to cross-

5     examine your witness, comment on your evidence, explain your

6     evidence?  Does anybody get to do that?

7          **MR. SALAZAR:**  I would definitely look into that,

8     Judge.  I don't have the facts for that.

9          **THE COURT:**  I mean I don't know what the procedure

10    is.  Again, this is new --

11         **MR. MARTINEZ:**  Yes.  Again --

12         **THE COURT:**  -- territory for us.

13         **MR. MARTINEZ:**  And the Court is right.  When taking

14    somebody's property and their money without any evidence --

15         **THE COURT:**  Yes, I mean --

16         **MR. MARTINEZ:**  Well, this is why the final --

17         **THE COURT:**  Yes, let's just assume hypothetically.

18         **MR. MARTINEZ:**  This is why the final --

19       **(Voices overlapping)**

20         **MR. SALAZAR:**  -- disposition of course.

21         **THE COURT:**  Let's just assume hypothetically this

22    gentleman bought this property 40 years ago before he got into

23    his alleged criminal acts or let's say it was an inheritance

24    from a -- he got it in a will from a dead grandmother and you-

25    all seize it.  He's a fugitive because he doesn't want to come

1    here but don't you still have to prove -- doesn't he get to

2    say, "Here's the will.  Here's the probate where it was

3    transferred to me.  I didn't pay anything for it.  It's mine

4    but I got it from an inheritance not because of some crime."  I

5    mean doesn't -- what's the mechanism for allowing him to come

6    and show that?  Again, you're going to have to show it was

7    purchased with money so maybe you go, "Well, you know, I still

8    have to prove my case."  That's a --

9            **MR. SALAZAR:**  Judge, we have -- we have witnesses.

10   We've got documentary evidence.  We've got firsthand knowledge.

11           **THE COURT:**  And nobody gets to cross-examine or --

12           **MR. SALAZAR:**  We have documents.  Correct, Judge, and

13   of course this is something that I'll look into because --

14           **THE COURT:**  So if we get like a co-conspirator

15   saying, "Hey, that house is" --

16           **MR. SALAZAR:**  Right.

17           **THE COURT:**  -- "drug money.  I'm sure he bought it."

18           **MR. SALAZAR:**  Right, right, right.

19           **THE COURT:**  And he doesn't get to say, "Well, here's

20   the will."  I mean if that's my only evidence and nobody's

21   there to cross-examine him or to bring him -- to impeach him

22   with something --

23           **MR. SALAZAR:**  Right.

24           **THE COURT:**  You know, it's very one-sided.  So I'm

25   just curious what's the mechanism.

1          **MR. SALAZAR:**  I will take a look, Judge, because that

2   is an area that -- I mean I haven't dealt with this either.

3          **THE COURT:**  Right.

4          **MR. SALAZAR:**  And so we'll take a look at that but of

5   course this is a lawsuit against money.  This is a lawsuit

6   against property and as a claimant if they have that claim he

7   can come here and have us put our evidence up and he has not

8   done that.

9          **THE COURT:**  Well, he's hired a lawyer.  He doesn't

10  physically have to be here to handle a civil action.

11         **MR. SALAZAR:**  Well true, Judge, but --

12         **THE COURT:**  But again there's a law though that says

13  this fugitive disentitlement.

14         **MR. MARTINEZ:**  I'm not arguing with -- yes, I'm not

15  arguing the fugitive entitlement.  What I'm arguing with is the

16  entry of a final judgment without any evidence and again, I

17  think the Court -- it's a new area, right, so it's going to be

18  something that, you know, we've got to dissect and try and get

19  it right here because sitting back and saying, "Hey, I'm going

20  to take all this and I'm going to do all this and all I've got

21  is evidence otherwise," without anything else is something that

22  I think is problematic to say the least.

23         **MR. SALAZAR:**  But that's a hypothetical, Judge.

24         **THE COURT:**  Yes, I mean -- I have had --

25         **MR. SALAZAR:**  If we don't have anything.

1          **THE COURT:**  I have had hearings.  You might call them

2     a banks trial where there has been claimants to a property and

3     the government came in and put on their evidence and proved up

4     the case and it was contested.  A lawyer cross-examined for the

5     claimants.  So I mean I know that --

6          **MR. SALAZAR:**  Perhaps that's the way, Judge.

7          **THE COURT:**  Except that what you're saying is no, he

8     doesn't get to be here because his client's been disentitled.

9          **MR. SALAZAR:**  No, what we're saying, Judge, and I

10    need to draft the motion and the intricacies of everything is

11    that he's not entitled to the discovery.  They're not entitled

12    to the discovery because they're a fugitive, because he is a

13    fugitive.  That's my understanding.

14         **MR. MARTINEZ:**  So we would go forward without

15    discovery and just have a civil forfeiture --

16         **MR. SALAZAR:**  We're just speaking in hypothetical's

17    completely.

18         **MR. MARTINEZ:**  Okay.

19         **MR. SALAZAR:**  Completely hypothetical.

20         **THE COURT:**  Yes.  You need to do some research on

21    this.

22         **MR. SALAZAR:**  But I don't think we're going to get

23    there, Judge, because we are putting something together for the

24    Court.  I know Mary Ellen is working on that and so --

25         **THE COURT:**  Well, let me dismiss the house out of the

1    case.

2              **MR. MARTINEZ:**  Right.

3              **THE COURT:**  And then --

4              **MR. MARTINEZ:**  So all we're dealing with is the

5    funds.

6              **THE COURT:**  Is the funds.

7              **MR. MARTINEZ:**  And Mr. Silva at this point.

8              **THE COURT:**  And Mr. Silva, right, because --

9    Ms. Silva only as to the house.

10             **MR. MARTINEZ:**  Ms. Silva's got the house.

11             **THE COURT:**  Okay.

12             **MR. MARTINEZ:**  And we understand the lis pendens and

13   we understand it's in another criminal forfeiture action.  We

14   get that.  So if we're just dealing with this one issue and

15   this one individual and the entry of a final judgment and I

16   understand where the Court's going with the fugitive

17   disentitlement --

18             **THE COURT:**  Right.

19             **MR. MARTINEZ:**  -- but I also understand the Court --

20   (indiscernible) -- I'm going to enter a final judgment without

21   any evidence or anything.

22             **THE COURT:**  Yes, I mean there sort of needs to be

23   like maybe a motion for summary judgment or something where you

24   put some --

25             **MR. SALAZAR:**  She is -- she is lead counsel, Judge.

23

1    She's working on that so she'll get that.

2              THE COURT:  All right.  So then --

3              MR. SALAZAR:  She'll get that to you.

4              THE COURT:  Okay.  So I'm going to enter that order

5    dismissing the house.  There is a pending motion on the statute

6    of limitations. It wasn't dismissed based on the statute of

7    limitations.  I've got to figure out what to do with that but

8    there needs to be a response to that.

9              MR. SALAZAR:  I know she's working on that.

10             THE COURT:  And so why don't I set this for like a

11   status conference in six weeks, two months?

12             MR. MARTINEZ:  Two months.

13             THE COURT:  Two months to give a response time.  All

14   right.  Then that's --

15             MR. MARTINEZ:  In the meantime, we're still working

16   with the government in some way, shape, or form.

17             THE COURT:  All right.  Then I'll reset this for a

18   status conference in two months and I'll enter that order

19   granting the motion to dismiss in the interim.

20             All right.  Thank you-all for being here.

21             MR. SALAZAR:  Judge, thank you for listening to us.

22             MR. MARTINEZ:  Thank you, your Honor.

23             THE COURT:  Thank you.  Absolutely.  We'll be in

24   recess.

25        **(Proceeding was adjourned at 10:32 a.m.)**

24

**<u>CERTIFICATION</u>**


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



<u>August 30, 2016</u>
_____

          Signed                                Dated


*TONI HUDSON, TRANSCRIBER*